UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                      Case No. 2:24-cr-20238

v.                                 Honorable Susan K. DeClercq
                                    United States District Judge

ANTHONY LORD McGEE,

               Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (ECF No. 46)

Suspecting that Anthony McGee had shot and killed someone, police officers obtained a state court search warrant for location, text, and call data from a telephone allegedly belonging to him. The officers believed that this evidence would corroborate their theory that McGee was in the vicinity at the time of the homicide. Then, years later, federal investigators sought a second warrant—this time in federal court—to conduct a complete forensic analysis (i.e., a much more exhaustive search) of the contents of McGee's cellphone. The federal warrant application relied in part on factual information obtained from executing the state search warrant. Ultimately, the federal warrant was issued too.

Now, McGee moves to suppress the fruits of both warrants, arguing that there was no probable cause to support the state warrant and that it could not be saved by

the good-faith exception. McGee also argues that because the federal warrant application relied on some of the same facts as the state warrant application, the federal warrant is also tainted and must be suppressed. For the reasons stated below, although the state warrant was unsupported by probable cause, it is saved by the good-faith exception, which in turn saves the federal warrant too. McGee's motion will therefore be denied.

## I. BACKGROUND

In September 2022, the Detroit Police Department was investigating a homicide and narrowed in on Anthony McGee as a suspect. ECF No. 46 at PageID.206 (sealed). Thus, in November 2022, Officer Avraham Goldstein sought a search warrant in state court for certain records from McGee's cellphone, including call and text records, subscriber information, and cell site location data. ECF No. 46-2 (sealed).

Goldstein attached an affidavit in support of his warrant request. According to that affidavit, police initially reviewed surveillance video of the shooting that showed a glimpse of the shooter. The footage showed that the shooter was an "unknown black male wearing a black hoodie, a mask covering a portion of his face, light blue jeans with pre-cut holes in them, and red and black shoes." *Id.* at PageID.220. The video also captured the shooter wearing distinctive underwear. *Id.*

In the rest of the affidavit, Goldstein articulated why investigators believed McGee might have been the shooter. To start, Goldstein explained that he had received an anonymous tip that that named McGee as the shooter, provided McGee's telephone number,[1] and identified the specific car—by make, model, and license plate—McGee drove on the night of the homicide. *Id.* at PageID.221. Using the Department's license plate reader system, Goldstein confirmed that the same car had been in the area of the shooting at the time it occurred. *Id.* at PageID.220.

The supposed connection to McGee further took shape as Goldstein searched law-enforcement databases. During his search, Goldstein discovered that McGee had been involved in a traffic stop just 11 days before the shooting. *Id.* According to Goldstein, bodycam footage from that stop showed McGee wearing "the same jeans and undergarments as in the fatal shooting." *Id.* Also during that traffic stop, McGee gave the officers the same telephone number reported by the anonymous tip. *Id.*

---

[1] McGee raises for the first time in a footnote to his Supplemental Reply that the anonymous tipster also mentioned that McGee's phone number had recently changed. ECF No. 62 at PageID.352–53. Although this casts some doubt on the reliability of the tip, for the purposes of this motion, this Court must consider only the information contained in the "four corners" of the affidavit—which does not include this information. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006). Further, the number provided by the tipster was the same as the one provided by McGee weeks prior, which still constitutes corroboration for this Court's purposes. *See Gates*, 462 U.S. at 241 ("Our decisions applying the totality-of-the-circumstances analysis outlined above have consistently recognized the value of corroboration of details of an informant's tip by independent police work.").

Goldstein then noted that he had confirmed that the telephone number was a valid and working number, with AT&T as the cell provider. *Id.* at PageID.231.

Goldstein concluded the factual basis of his affidavit with: "Affiant believes the phone records, mapping, and whereabouts of Anthony McGee will assist investigators in the investigation of the fatal shooting." *Id.* Later in the affidavit, Goldstein described how, based on his training and experience, cellphone data can reveal a variety of information relevant to criminal investigations:

> (1) Acquiring an extended period of call detail records can assist in establishing a pattern of life, or use, of a target telephone;
>
> (2) The establishment of this pattern of life, or use, is critical in helping investigators determine if, and when, this calling pattern changes, intensifies, or wanes during relevant time periods within the investigation;
>
> (3) Changes within this pattern occur with respect to calls to and from the victim(s), suspect(s) and witness(es) in, and around, the time of criminal activity;
>
> (4) Changes in pattern of life can assist investigators in identifying any co-conspirator(s) who may have provided aid or counsel, during the relevant time period surrounding the conception, planning, commission and/or cover-up of criminal activity.

*Id.* at PageID.232. Ultimately, Goldstein concluded that he had probable cause to believe that information obtained from McGee's cellphone would provide evidence to assist in the murder investigation. *Id.*

On the above facts, on November 21, 2022, a state court judge issued a search warrant for McGee's cellphone records. *Id.* at PageID.225. Officers then searched

- 4 -

those records and found that McGee's cellphone was in the area of the shooting at the time it occurred. ECF No. 46 at PageID.208 (sealed). Officers also tracked McGee's cellphone to effectuate his arrest in December 2022. *Id.*

Years later, on February 10, 2025, Officer Ali Bilal with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) sought a new warrant—this time in federal court—to search the contents of the same cellphone. ECF No. 49 (sealed). In his supporting affidavit, Bilal mentioned that although a state warrant had been issued for the cellphone in December 2022,[2] he sought a federal warrant out of "an abundance of caution." *Id.* at PageID.239. According to Bilal, no information obtained through the December 2022 warrant was included in the federal warrant application. *Id.*

The federal warrant application began with the same facts as the state warrant: Detroit Police were investigating a homicide that occurred on September 25, 2022, and an anonymous tip identified McGee as the shooter. *Id.* at PageID.241–42. The tipster provided a telephone number for McGee and described the car McGee was driving at the time of the shooting and even included a photo of it. *Id.* at PageID.243.

---

[2] This December 2022 warrant should not be confused with the state warrant challenged by Defendant, which was issued in *November* of the same year. The December warrant is not before this Court, and no one has alleged that it was improperly relied upon in the preparation of the federal warrant in this case. All other references to the "state warrant" throughout this opinion refer to the November warrant, which is challenged here.

And like the state warrant, the federal application noted that Detroit Police confirmed that (1) the car was in the area of the shooting at the time it occurred and (2) McGee had provided the same telephone number to police two weeks before the shooting. *Id.* at PageID.244–47.

Notably, however, the federal warrant application included much more evidence than the state warrant application.[3] For example, Bilal states that surveillance video traced the full path of the car tied to McGee. Right before the shooting, the car pulled up to the alley that the shooter walked through before opening fire, and it left just after. *Id.* at PageID.245–46. Next, Bilal mentions that Detroit Police obtained a warrant for McGee's cellphone records and determined that McGee's phone connected to a cell tower in the area of the shooting at the time it occurred. *Id.* at PageID.247. At that point, Detroit Police surveilled McGee until arresting him at a gas station in Rochester Hills in December 2022. *Id.* at PageID.248. At that arrest, McGee was carrying on him a firearm and his cellphone—the same phone tracked by Detroit Police and the one being targeted by the federal warrant application. *Id.*

---

[3] The vast disparity of detail between the two warrants is evidenced by their respective length: the state warrant affidavit includes only three pages of facts, whereas the federal affidavit contains almost twenty. *Compare* ECF No. 46-2 *with* ECF No. 49.

When McGee was arrested, he was with his girlfriend. *Id.* Officers interviewed her, and she told them that McGee had been driving her car—the same one identified by the tipster—on the night of the shooting. *Id.* She also gave consent for the police to review her phone. *Id.* That investigation yielded a photo of McGee taken the night of the shooting, hours before it occurred. *Id.* at PageID.249. In that picture, McGee is wearing the same pants worn by the shooter in the surveillance video of the shooting. *Id.* The girlfriend further told the officers that she had texted that picture to McGee's cellphone—the same phone the officers recovered from him. *Id.* Accordingly, Bilal asserted, there was probable cause to believe that evidence connecting McGee to the homicide would be on his cellphone. *Id.* at PageID.249–50.

What's more, the federal warrant affidavit asserts that McGee, when interviewed after his arrest, admitted that he had (1) worn distinctive underwear (that officers believed was the same as the shooter's) when he had been involved in a traffic stop weeks before the shooting; (2) worn the pants from the girlfriend's photo on the night of the shooting; (3) driven the girlfriend's car by the shooting scene that night, but claimed he did so only *after* someone had called and told him about the shooting; (4) called a friend who he had heard "had something to do with the shooting" afterwards to find out if he was okay. *Id.* at PageID.250–52. McGee did,

- 7 -

however, deny being at the scene of the shooting before it happened. *Id.* at PageID.252.

In light of the above evidence, Bilal stated his belief that searching McGee's phone would provide "media and communication about the homicide" and "more specific evidence of [McGee]'s location during the time of the shooting." *Id.* at PageID.252–53. He also added that in his training and experience: (1) people who possess firearms often take pictures and videos of themselves and others with firearms; (2) people who *unlawfully* possess firearms and post photos of them frequently use cellphones to advertise and facilitate the sale and purchase of firearms; and (3) people who use social media often post pictures with "the fruits of [their] criminal exploits." *Id.* at PageID.253–54.

The federal warrant was issued by United States Magistrate Judge Anthony P. Patti on February 10, 2025. *Id.* at PageID.237.

On March 17, 2025, McGee filed a motion to suppress evidence from both warrants. ECF No. 46 (sealed). He argues that: (1) the state warrant was unsupported by probable cause and cannot be saved by the good-faith exception; and (2) because the federal warrant relied on evidence from the deficient state warrant, the federal warrant is also tainted and must be suppressed under the Fourth Amendment. *Id.* The matter was fully briefed, ECF Nos. 52; 54, and a hearing was held on April 30, 2025.

At that hearing, this Court ordered supplemental briefing, which was provided. ECF Nos. 56; 58; 59; 62. No further hearing is needed.

## II. LEGAL STANDARD

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause for a search—as opposed to an arrest—means a "fair probability" that contraband or evidence will be found in a particular place or on the premises of the proposed search. *United States v. Terry*, 522 F.3d 645, 648 (6th Cir. 2008) (quoting *Gates*, 462 U.S. at 238).

In determining whether probable cause existed for a search warrant, a court must examine only the information contained in the "four corners" of the accompanying affidavit, and it must do so in light of the totality of the circumstances. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (first citing *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004), and then citing *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). The reviewing court must also ensure that the initial judge had a "substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (cleaned up). The initial judge's determination of probable cause is entitled great deference and should be

reversed only if "arbitrarily made." *Jackson*, 470 F.3d at 306 (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc)).

The affidavit supporting the search warrant must also establish a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)). Generally, ownership of the property to be searched is not, on its own, enough to establish a nexus under the Fourth Amendment. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."); *see also United States v. Schultz*, 14 F.3d 1093, 1097–98 (6th Cir. 1994) ("While an officer's 'training and experience' may be considered in determining probable cause . . . it cannot substitute for the lack of evidentiary nexus in this case . . . . To find otherwise would be to invite general warrants authorizing searches of *any* property owned, rented, or otherwise used by a criminal suspect—just the type of broad warrant the Fourth Amendment was designed to foreclose.").

In the context of cellphone data, a nexus between the thing to be searched and the evidence sought is still required. *See United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015); *United States v. Ennis*, No. 21-1093, 2022 WL 976930, at *2 (6th

Cir. Mar. 31, 2022). That said, it is an open question[4] in this Circuit exactly which standard applies for a nexus in these cases:

> This court has not decided whether the requisite probable cause nexus for a warrant to search a cell phone is only "a fair probability" that "the phone's data 'will aid in a particular' investigation and disclose evidence of criminal activity" or if, instead, the affidavit must make factual allegations that "the phone itself is being used 'in connection with criminal activity.'"

*United States v. Rolling*, No. 23-1045, 2024 WL 4512532, at *3 (6th Cir. Oct. 17, 2024), *cert. denied,* No. 24-6980, 2025 WL 1426759 (U.S. May 19, 2025) (collecting cases).

Even if the affidavit lacked probable cause and thus violated the Fourth Amendment, exclusion is not a proper remedy if the evidence was "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984). Good-faith reliance is an objective standard; the question for the reviewing court is whether a "reasonably well-trained officer [could have relied] on the warrant." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 645 (6th Cir. 2003). Under the *Leon* good-faith exception, officers must "have a reasonable knowledge of what the law prohibits." 468 U.S. at 919 n.20.

---

[4] This is not a question this Court must resolve, however. As discussed below, the state warrant fails to articulate a nexus even under the more lenient of the two standards.

Ultimately, evidence need only be suppressed when the search warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (cleaned up) (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)). Specifically, an affidavit is "bare bones" and must therefore be suppressed if it "merely states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. O'Neill*, 94 F.4th 531, 541 (6th Cir. 2024) (cleaned up) (quoting *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (en banc)).

Thus, an affidavit is not "bare bones" just because it fails to establish probable cause. *United States v. White*, 874 F.3d 490, 496–97 (6th Cir. 2017). Rather, "reasonable inferences that are not sufficient to sustain probable cause may suffice to save the ensuing search as objectively reasonable." *O'Neill*, 94 F.4th at 542 (cleaned up) (quoting *White*, 874 F.3d at 500). Finally, the good-faith exception may apply in cases where "the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched, even if the information provided was not enough to establish probable cause." *Frazier*, 423 F.3d at 536 (cleaned up) (quoting *Carpenter*, 360 F.3d at 596).

- 12 -

### III. DISCUSSION

McGee argues that any evidence derived from both warrants must be suppressed because (1) the state warrant lacked probable cause and is not saved by the good-faith exception, and (2) the federal warrant relied on evidence derived from the first warrant and thus its fruits must also be suppressed. The government responds that there was probable cause to support both warrants, but even if there was not, the good-faith exception saves both. In a case like this one, "when both searches are conducted pursuant to a search warrant, each warrant must be sought and executed by law enforcement in good faith as prescribed by *Leon*." *United States v. Tucker*, 742 F. App'x 994, 1003 (6th Cir. 2018). Accordingly, this Court will review the two warrants each in turn.

### A. The State Warrant

#### *1. Probable Cause*

The first question is whether the state warrant affidavit was supported by probable cause.

Officer Goldstein's supporting affidavit reads like an arrest warrant, providing a basis for the belief that McGee could be responsible for the homicide. However, arrest warrants are not search warrants. *Steagald v. United States*, 451 U.S. 204, 212–13 (1981). Because search warrants are meant to protect "an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the

- 13 -

police," they require a showing of "probable cause to believe that the legitimate object of a search is located in particular place." *Id.* at 213.

The evidence against McGee—between the anonymous tip, his car having been at the scene, and the similar pants and underwear during the earlier traffic stop—was enough to establish probable cause that he was involved in the homicide. But it is a much closer question whether the affidavit established that *evidence of a crime would be found on McGee's cellphone*, as is required for nexus. On this point, the affidavit is notably sparse, stating only that both McGee and an anonymous tipster had identified the telephone number as McGee's. ECF No. 46-2 at PageID.221 (sealed).

More telling, however, is what the affidavit does not state. The affidavit does not state that McGee had the phone *on his person* during his earlier traffic stop, nor does it give any reason to believe that McGee had the phone with him on the date of the shooting. *Id.* Further, as McGee points out, the affidavit does not claim that surveillance or bodycam footage captured McGee using a cellphone. The affidavit does not claim that McGee is known to carry a cellphone with him. The affidavit does not claim that McGee has only one cellphone. And the affidavit does not claim that McGee had the phone on him, or that he was using his phone at the time of the murder. ECF No. 54 at PageID.297. True, McGee told police that was his telephone number during the traffic stop, 11 days before the shooting. But despite the

- 14 -

Government's characterization, the affidavit does not go so far as to state that McGee "admitted to using that phone number. . . shortly before the murder." *Compare* ECF No. 52 at PageID.289 *with* ECF No. 46-2 at PageID.230 ("Mr. McGee provided his phone number. . . to officers."). Therein lies the failure of the state warrant—it fails to adequately articulate a nexus, or "a fair probability that the phone's data will aid in a particular investigation and disclose evidence of criminal activity." *Ennis*, 2022 WL 976930, at *2 (quoting *United States v. Sheckles*, 996 F.3d 330, 338 (6th Cir. 2021)).

Even so, the Government argues that to satisfy the probable cause requirement, the state warrant requires only the reasonable inference that most people always carry their cellphones with them. But that is not enough. In reality, getting to probable cause would *further* require the inferences that: (1) McGee actually *used* the phone for which he provided the number; (2) McGee *still* used that phone more than one week after he gave officers the number; (3) McGee used it in such a way that would yield evidence of the homicide, either by carrying it with him that night, or communicating about the shooting in some way, or at least that he used the phone frequently enough to establish a "pattern of use." *See* ECF No. 46-2 at PageID.232. True, "a court may draw certain reasonable inferences from the information presented in a search warrant affidavit." *United States v. Lewis*, 81 F.4th

640, 650 (6th Cir. 2023). But that does not mean that courts can infer "facts that are entirely missing from the affidavit." *Id.*

The Government provides no case to support its assertion that giving officers a phone number establishes a sufficient nexus between that phone and any suspected criminal activity or evidence thereof. To the contrary, courts have declined to find a nexus for cellphone searches even when there *is* evidence that the defendant used the phone. *See, e.g.*, *United States v. Griggs*, No. 2:20-CR-20403-1, 2021 WL 3087985, at *3 (E.D. Mich. July 22, 2021) (finding no nexus between phone and offense despite informant's belief that defendant used the phone for drug transactions, and despite affiant's confirmation that the number was registered to defendant); *United States v. Tanzil*, No. 23-20654, 2025 WL 18642, at *3 (E.D. Mich. Jan. 2, 2025) (finding no nexus between offense and phone recovered upon arrest because the "affidavits here did not contain any allegations stating the phone was used during the alleged offenses or that it was used to store evidence of the offense"); *United States v. Ramirez*, 180 F. Supp. 3d 491, 494 (W.D. Ky. 2016) (finding no nexus between phone and offense where the "only information in the affidavit indicating any likelihood that evidence of a crime might be found on Ramirez's phone was the fact that *he was arrested for an alleged drug conspiracy while he possessed the phone*.") (emphasis added).

- 16 -

In short, because the state warrant's supporting affidavit failed to set forth any facts showing that McGee ever *used* the target cellphone, let alone that it would contain evidence that would aid in the investigation of the homicide, the nexus requirement was not met, and the warrant lacked probable cause.

## 2. Good Faith

The question remains, however: was it reasonable for a police officer to rely on the state warrant in executing a search? Here, it was.

Again, the good-faith exception applies when the affidavit contains a "minimally sufficient nexus" between the thing to be searched and the evidence to be seized. *United States v. Neal*, 106 F.4th 568, 572 (6th Cir. 2024). This is a low bar; "[a]ll it requires is a 'modicum of evidence, however slight' connecting the illegal activity and the place to be searched." *Id.* (quoting *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017)). And "reasonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable." *White*, 874 F.3d at 500.

Here, although the evidence in the state warrant did not suffice to establish probable cause, it was not unreasonable for officers to rely on the warrant in executing the search. First, the warrant included significant evidence of McGee's involvement in the homicide. Second, the warrant contained facts that, despite originating from an anonymous tip, were corroborated through additional

- 17 -

investigation—including facts about the car McGee had been driving on the night of the shooting and his phone number. Third, the warrant noted that McGee told officers his phone number. And fourth, the warrant described how information from McGee's phone would assist in their investigation. Taken as a whole, and given the lack of consensus in this circuit as to permissible inferences,[5] it was not unreasonable for an officer to infer (1) that McGee used the phone number frequently enough for there to be evidence in his call or text history, and (2) that he carried the phone on him, as most people who own cell phones do, frequently enough that there may be evidence of his location on it that could assist in the investigation. Accordingly, the good-faith exception applies to the state warrant, and the evidence obtained as a result of it will not be suppressed.

---

[5] Indeed, as United States Circuit Judge Karen Nelson Moore's recently pointed out in her concurrence in *United States v. Smith*, "this court continues to grapple . . . with the permissible scope of those nexus-supporting inferences. Even when faced with no evidence connecting a crime to a suspect's residence, for instance, this court has been 'pulled' in 'both directions' when inferring a link between the suspect and the suspect's home. One cannot expect a reasonable officer to recognize a lack of probable cause to support an evidentiary nexus if some members of this court are unable to do so." 2022 WL 4115879, at *17 (6th Cir. Sept. 9, 2022) (Moore, J., concurring).

## B. The Federal Warrant

McGee does not appear to argue that the federal cellphone search warrant was facially invalid. Instead, he argues that its fruits should be suppressed because it relied on the deficient state warrant. *See* ECF No. 46 at PageID.206 ("Without that unlawfully obtained evidence, the [federal warrant]'s affidavit does not establish probable cause that evidence of a crime will be found in McGee's cell phone."). But in light of the above conclusion that the first warrant is saved by the good-faith exception, the federal warrant does not impermissibly rely on unconstitutionally obtained evidence. And on its own, the federal warrant is supported by probable cause. Thus, there is no basis to suppress the evidence obtained under the federal warrant.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that McGee's Motion to Suppress Evidence, ECF No. 46, is **DENIED**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: June 30, 2025